IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEANETTE T. KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV276 |
| | ) | |
| FRANCISCO ARGUETA, a/k/a FRANCISCO | ) | |
| ROTUI, a/k/a FRANCISCO ROMERO, | ) | |
| ALDO DIPUORTO, MARIA DIPUORTO, | ) | |
| and THE ALDO DIPUORTO and MARIA | ) | |
| DIPUORTO PARTNERSHIP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action on March 23, 2016, in state court, alleging gender discrimination and retaliation in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), as well as various state law claims. (ECF No. 7.) Defendants timely removed the action to this Court. (ECF No. 1.) Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6). (ECF No. 15.) For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

Defendants Aldo DiPuorto, Maria DiPuorto, and the Aldo and Maria DiPuorto Partnership ("Defendant Owners") own and operate restaurants under the name "Elizabeth's Pizza," one of which is located in Thomasville, North Carolina. (ECF No. 7 ¶ 6.) On or about July 15, 2013, Plaintiff was hired as a waitress by Kim Morgan Wilkes ("Wilkes"), the

restaurant's Waitress Manager/Head Waitress. (*Id.* ¶ 7.) Wilkes served as Plaintiff's supervisor, responsible for the training, scheduling, and calculation of payroll for the waitress staff. (*Id.*) While employed at the restaurant, Plaintiff's job performance was "competent and satisfactory." (*Id.*) Francisco Argueta ("Argueta"), who had been hired by Defendant Owners in or about 2002, was employed at the restaurant as its Kitchen Manager. (*Id.* ¶¶ 8, 9.) Argueta also "served as the general manager of the restaurant whenever Defendant Aldo DiPuorto and/or his son, Gino DiPuorto,[1] were not present, which was most of the time." (*Id.*)

Immediately upon being hired, Argueta began making "crude," sexual comments to Plaintiff, and "repeatedly subjected [Plaintiff] to unwanted and offensive sexual harassment." (*Id.* ¶ 14) For example, Argueta asked Plaintiff about her sex life and "repeatedly" made comments about "need[ing] a girl on the side." (*Id.*) Plaintiff would respond to Argueta's comments by saying "that she did not talk about such things and that she did not like him making such comments to her or the other waitresses." (*Id.* ¶ 15.) Plaintiff also complained to her supervisor, Wilkes, about Argueta's inappropriate "comments and behavior toward her." (*Id.* ¶ 18.)

A few days after being hired, Plaintiff responded to "one of Argueta's sexual comments" by asking him "how can you sleep at night?" (*Id.* ¶ 16.) In response, Argueta said, "'like this' and, while looking at Plaintiff, moved his hand back and forth in front of his crotch as if he were masturbating." (*Id.* ¶ 16.) Plaintiff "promptly" complained to Wilkes about this

---

[1] Gino DiPuorto is the son of Defendants Aldo and Maria DiPuorto, and Plaintiff alleges that he "was an employee, general manager and agent of the Defendant Partnership." (ECF No. 7 ¶ 5.)

incident, which Wilkes later witnessed because it was "recorded by the surveillance cameras in the restaurant." (*Id.* ¶ 18.)

On or about July 22, 2013, after Plaintiff made another complaint to Wilkes about Argueta, Wilkes confronted Argueta, with Plaintiff present, and told him that his conduct "was inappropriate and that he needed to stop." (*Id.* ¶ 19.) In response, Argueta told both Wilkes and Plaintiff that they "needed to get laid so that [they] would be in better moods." (*Id.*) Plaintiff continued to report and complain to Wilkes about the ongoing sexual harassment by Argueta. (*Id.* ¶ 20.) Although Wilkes relayed Plaintiff's complaints to Defendant Owners, Argueta's harassment "nevertheless continued." (*Id.*) Upon learning that Plaintiff was complaining to her supervisor about his conduct, Argueta's behavior toward Plaintiff "became even more offensive, in an effort to retaliate against her and cause her to leave." (*Id.* ¶ 21.) Specifically, in addition to making sexual comments to, and around, Plaintiff, Argueta "also began yelling and screaming at Plaintiff on each occasion when she worked." (*Id.*)

Then, on or about July 28, 2013, Argueta, "without provocation," slapped Plaintiff on her buttocks "so hard that it left a hand print on Plaintiff's skin." (*Id.* ¶ 22.) Plaintiff confronted Argueta and told him "that he had hurt her" and, in response, "Argueta smiled and commented . . . that there was an insect on Plaintiff's 'butt.'" (*Id.*) That same day, Argueta falsely accused Plaintiff of stealing a tip left for another waitress, "and [made] other derogatory comments about Plaintiff, urging Wilkes to fire [Plaintiff]." (*Id.* ¶ 23.)

Four days later, on or about August 1, 2013, Plaintiff quit her job at the restaurant, "because she could no longer stand Defendant Argueta's constant harassment and retaliation." (*Id.* ¶ 25.) Plaintiff also initiated a criminal complaint against Argueta, on August 2, 2013,

"based upon his physical assault."[2]  (*Id.* ¶ 26.)  On August 27, 2013, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") based on gender discrimination and retaliation in violation of Title VII.  (*Id.* ¶ 43.)  On September 30, 2015, the EEOC issued a determination finding reasonable cause to believe that Plaintiff's employer had violated Title VII.  (*Id.* ¶ 43; ECF No. 17 ¶ 43.)  The EEOC later issued a Notice of Right to Sue on December 31, 2015.  (*Id.*)  Plaintiff then filed the instant lawsuit seeking compensatory and punitive damages, as well as injunctive relief.  (ECF No. 7 at 8–9.)  Defendants filed an Answer to Plaintiff's Complaint, (ECF No. 17), and subsequently moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6), (ECF No. 15).[3]

## II.  STANDARD OF REVIEW

A motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires that a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests,"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[2] Argueta ultimately entered into a Deferred Prosecution Agreement ("Agreement") in *State v. Francisco Romero Argueta a/k/a Francisco Rotui*, Case No. 13-CR-54779.  As part of the Agreement, Argueta agreed to probation, community service, and attendance at a sexual harassment/hostile work environment class.  (ECF No. 7 ¶ 26; ECF No. 17 ¶ 26.)

[3] Where, as here, Defendants have filed an Answer, a Rule 12(b)(6) motion "should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  As a practical matter, a Rule 12(c) motion is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)."  *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013).

A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Dismissal under Rule 12(b)(6) is only appropriate "when the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 300 (M.D.N.C. 2015) (quoting *Brown v. Target, Inc.*, No. ELH-14-00950, 2015 WL 2452617, at *9 (D. Md. May 20, 2015)).

On a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, *Iqbal*, 556 U.S. at 678, and construe all factual allegations in the light most favorable to the plaintiff, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "Although the Supreme Court has . . . made clear that the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, . . . '[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.'" *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (internal citations omitted) (alteration in original) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

## III. DISCUSSION

### A. <u>Gender Discrimination and Retaliation under Title VII (Claim 4)</u>[4]

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing]

---

[4] Defendants removed this action from state court to this Court based on federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1 ¶ 5.) Accordingly, the Court will, first, consider whether Plaintiff's federal claim should be dismissed pursuant to Rule 12(b)(6).

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before a plaintiff files suit under Title VII, she must exhaust her administrative remedies which requires that she, first, file a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The parties here do not argue in their briefs that Plaintiff has failed to exhaust her administrative remedies with respect to her Title VII claims.[5] (*See* ECF No. 7 ¶ 43; ECF No. 17 ¶ 43.) Plaintiff alleges that she filed an EEOC charge based on gender discrimination and retaliation on August 27, 2013 which culminated in the EEOC's finding of reasonable cause and the issuance of a Notice of Right to Sue on December 31, 2015. (*Id.*) The Court therefore has subject matter jurisdiction over Plaintiff's Title VII claims.[6]

### 1. *Hostile Working Environment based on Gender Discrimination*

A plaintiff may bring suit against an employer under Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[5] Defendants allege in their Answer that "at no point in Plaintiff's EEOC charge does she mention a claim for retaliation [and] Plaintiff has not satisfied any conditions precedent to litigation for [a] stated claim of retaliation pursuant to Title VII." (ECF No. 17 ¶ 43.) However, because Plaintiff is not required to reply to Defendants' Answer, at this stage in the litigation, allegations in the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

[6] The existence of the Court's subject matter jurisdiction is a threshold issue which must be addressed before considering the merits of the case. *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999.)

environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). To establish a claim for hostile work environment based on gender discrimination, a plaintiff must show "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

Plaintiff's Complaint includes allegations sufficient to satisfy the first element of this claim – that Argueta's allegedly harassing conduct was unwelcome. Specifically, Plaintiff alleges that:

(i) she "immediately complained to . . . Argueta about his inappropriate conduct," (ECF No. 7 ¶ 18);

(ii) she responded to Argueta's "crude," sexual comments "by complaining to him that she did not talk about such things and that she did not like him making such comments to her or the other waitresses," (*id.* ¶¶ 14, 15);

(iii) on one occasion, in response to . . . Argueta's "sexual comments," she asked him, "how can you sleep at night?" (*Id.* ¶ 16); and

(iv) she complained to her supervisor, Wilkes, about Argueta's allegedly harassing conduct on more than one occasion, (*id.* ¶¶ 18–20).

With respect to the remaining elements of Plaintiff's hostile work environment claim, Defendants argue that Plaintiff has failed to plead facts necessary to satisfy each element. (ECF No. 16 at 11.) Defendants contend that, as to the second element, Plaintiff "pleads no facts as to how [Argueta] treats male employees to show his behavior was based upon sex."

7

(*Id.*) While this may be true, a plaintiff may plead allegations of "explicit or implicit proposals of sexual activity" to satisfy this element because, as recognized by the Supreme Court, "it is reasonable to assume those proposals [in most male-female sexual harassment situations] would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Further, conduct that is "sexually motivated," rather than merely "sexual in content," also supports claims of discrimination based on sex. *See Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 260–261 (4th Cir. 2001).

Here, Plaintiff alleges that:

(i)      when she began working at the restaurant, "Argueta immediately began making crude comments of a sexual nature to Plaintiff and in her presence," (ECF No. 7 ¶ 14);

(ii)      Argueta asked about her sex life on her second night at work, (*id.*);

(iii)      Argueta repeatedly commented that "every man needs a girl on the side," and "every man needs to be satisfied," (*id.*);

(iv)      in response to Plaintiff asking Argueta how he could sleep at night, Argueta said "'like this' and, while looking at Plaintiff, moved his hand back and forth in front of his crotch as if he were masturbating," (*id.* ¶ 16);

(v)      Argueta talked about having sex with another waitress and said that she would be his "next girl on the side" and that he would "teach her and she will do it [his] way," (*id.* ¶ 17); and

(vi)      "without provocation", Argueta "slapped Plaintiff on the buttocks with his hand,"

and "[t]he blow was so hard that it left a
hand print on Plaintiff's skin," (*id.* ¶ 22).

These allegations, accepted as true, are sufficient to allege that Argueta's harassing conduct was based on Plaintiff's sex. *See Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 142 (4th Cir. 1996) (explaining that "[a]n employee is harassed or otherwise discriminated against 'because of' . . . her sex if, 'but for' the employee's sex, . . . she would not have been the victim of the discrimination").

Despite having satisfied this element, however, "[n]ot all sexual harassment that is directed at an individual because of his or her sex is actionable." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996). To be actionable, the harassing conduct must be severe and pervasive, *i.e.*, "so extreme as to amount to a change in the terms and conditions of employment." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

The determination of whether conduct is severe or pervasive is both subjective and objective. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). As such, a plaintiff "must show that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* Although a plaintiff may subjectively believe that the offending conduct created a hostile work environment, "[c]onduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21 (emphasis added). In deciding whether conduct is sufficiently severe or pervasive to create an objectively hostile and abusive work, courts must consider the totality of the circumstances including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is

9

physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *First Union Nat'l Bank*, 202 F.3d at 242. Such a determination, however, "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22.

In this case, Plaintiff's Complaint states that:

(i)      upon being hired, "Defendant Argueta immediately began making crude comments of a sexual nature to her, and in her presence," (ECF No. 7 ¶ 14);

(ii)      during Plaintiff's 18-day employment she was "repeatedly subjected . . . to unwanted and offensive sexual harassment," (*id.*);

(iii)      on more than one occasion, Argueta made comments of a sexual nature to Plaintiff, and in her presence, (*id.* ¶¶ 14, 17, 19);

(iv)      "in response to one of . . . Argueta's sexual comments," Plaintiff asked him "how can you sleep at night," and while looking at her, Argueta simulated masturbation, (*id.* ¶ 16);

(v)      "without provocation, [Argueta] slapped Plaintiff on the buttocks" with a blow "so hard that it left a hand print on Plaintiff's skin," (*id.* ¶ 22); and

(vi)      despite her repeated complaints about Argueta's conduct to her supervisor, (who, in turn, reported the complaints to Defendant Owners), and her direct complaints to Argueta, the allegedly harassing conduct "nevertheless continued" and "became even more offensive," (*id.* ¶¶ 18, 20, 21).

At this stage in the proceedings, such allegations are sufficient to satisfy the severe or pervasive element of plaintiff's hostile work environment claim. *See Conner v. R.H. Barringer Distribution Co.*, 152 F. Supp. 2d 856, 860 (M.D.N.C. 2001) (finding plaintiff's allegations, which

included two examples of harassing remarks and one example of a physical encounter, sufficient to show severe or pervasive conduct at the motion to dismiss stage).

With respect to the fourth element of Plaintiff's hostile work environment claim – whether the allegedly harassing conduct may be imputed to the victim's employer – "[t]he status of the harasser" is relevant. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). If, on the other hand, the harassing employee is the victim's supervisor, "different rules apply" and the employer may be held "strictly liable" for the supervisor's harassing behavior if it "culminates in a tangible employment action." *Id.*

In this case, Plaintiff alleges that, although Argueta's job title was that of Kitchen Manager, he also served as general manager "most of the time," (ECF No. 7 ¶ 8). Plaintiff makes no factual allegations, however, that Argueta exercised any actual supervisory control over the waitress staff. To the contrary, Plaintiff specifically alleges that she was hired by Wilkes who, as Waitress Manager/Head Waitress, served as her supervisor and who was responsible for the training, scheduling, and calculation of payroll for the waitress staff. (*Id.* ¶ 7.) As a result, the Court will analyze this element of Plaintiff's hostile work environment claim based on Argueta's status as a co-worker.

An employee may not "impute liability on an employer under a theory that the employer must exercise an all-seeing omnipresence over the workplace." *Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006). Thus, knowledge of co-worker harassment, may be imputed to an employer if a "reasonable employer, intent on complying with Title VII," would have

known about the harassment to which the plaintiff is subjected.  *Spicer v. Commonwealth of Va.,*
*Dep't of Corrs.*, 66 F.3d 705, 710 (4th Cir. 1995); *see Ocheltree*, 335 F.3d at 333–34 ("[T]he
employer may be liable in negligence if it knew or should have known about the harassment
and failed to take effective action to stop it.")

Here, Defendants contend that "Plaintiff has not alleged, nor do her facts support" a
claim that Defendant Owners were negligent in controlling the working conditions.  (ECF
No. 16 at 15.)  The Court finds this argument unpersuasive, given the following allegations in
Plaintiff's Complaint:

> (i)    "Argueta has a long history of sexually harassing the waitresses employed by the Defendant Owners," (ECF No. 7 ¶ 9);
>
> (ii)    During Argueta's employment at the restaurant, "multiple waitresses made complaints to Defendant Owners that Argueta engaged in sexually harassing conduct toward them and others," (*id.* ¶ 11);
>
> (iii)    "Wilkes repeatedly and concurrently" notified Defendant Owners of incidents of Argueta's "inappropriate physical activity with different waitresses," and Defendant Owners "took no action to discipline . . . Argueta or restrain him from continuing to engage in such activity," (*id.* ¶ 12);
>
> (iv)    "Plaintiff repeatedly reported and complained to Wilkes regarding the sexual harassment by Argueta, and Wilkes relayed these complaints to the Defendant Owners, but the harassment by Argueta nevertheless continued," (*id.* ¶ 20); and
>
> (v)    "Despite their knowledge of [Argueta's] conduct, at no time did the Defendant

> Owners take any action to investigate
> Plaintiff's complaints, to discipline . . .
> Argueta, or to otherwise cause him to cease
> his inappropriate conduct toward Plaintiff
> and the other waitresses," (*id.* ¶ 25).

These allegations are sufficient to plausibly show that Defendant Owners knew or should have known about Argueta's harassment, yet failed to take any corrective action. Because the Court concludes that Plaintiff has sufficiently alleged facts to establish each element of her hostile working environment claim based on gender discrimination, Defendants' motion to dismiss this claim will be denied.

### 2. *Retaliation*

Plaintiff has also alleged a Title VII retaliation claim based on Argueta's retaliatory conduct, including Plaintiff's constructive discharge. Defendants argue that "Plaintiff has not alleged facts to push [this] claim from possible to plausible." (ECF No. 16 at 16.) The Court disagrees with Defendants.

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must allege: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, . . . [Plaintiff's] factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

With respect to the first element of a retaliation claim, Title VII prohibits an employer from retaliating against an employee "because [she] has opposed any practice [that is] made an

13

unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff's allegations of having opposed Argueta's harassing conduct include: (i) repeatedly complaining to Wilkes about Argueta's allegedly harassing comments and conduct, (ECF No. 7 ¶¶ 18, 20); and (ii) complaining directly to Argueta about his conduct, (*id.* ¶ 18). These allegations are sufficient to show that Plaintiff engaged in protected opposition activity. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003) (stating that "[e]mployees are . . . guaranteed the right to complain to their superiors about suspected violations of Title VII").

An employee's constructive discharge may constitute an adverse employment action when it occurs "in retaliation for the employee's exercise of rights protected by [Title VII]." *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984). "Constructive discharge occurs 'when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) (internal quotations omitted) (quoting *Holsey*, 743 F.2d at 209). In order to establish a constructive discharge claim, a plaintiff must prove: (i) "deliberateness of the employer's action;" and (ii) "intolerability of the working conditions." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff alleges that once Argueta learned that she had been complaining to her supervisor about his harassing conduct, his conduct "became even more offensive" toward Plaintiff." (ECF No. 7 ¶ 21.) Plaintiff also alleges that Argueta:

> (i)     yelled and screamed at Plaintiff "on each occasion
>         when she worked," (*id.*);

14

(ii)     physically struck Plaintiff on her buttocks "so hard that it left a hand print on Plaintiff's skin," (*id.* ¶ 22); and

(iii)    falsely accused Plaintiff of stealing a tip left for another waitress, and made derogatory comments about her, urging her supervisor to fire her (*id.* ¶ 23);

(iv)     "loudly chastised Plaintiff about an alleged customer complaint," and told her that she "was too stupid to be a waitress and that she couldn't do anything right," (*id.* ¶ 24).

Plaintiff further alleges that on August 1, 2013, less than one month after being hired, she quit her job at the restaurant "because she could no longer stand Defendant Argueta's constant harassment and retaliation." (*Id.* ¶ 25.) Plaintiff has, therefore, sufficiently alleged that her constructive discharge was an adverse employment action.

Plaintiff may satisfy the third element of a Title VII retaliation claim, by sufficiently alleging that there is close temporal proximity between the adverse employment action and the protected activity. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing that close temporal proximity may be "strongly suggestive of retaliatory motive and thus indirect proof of causation"). Although the Fourth Circuit has not adopted "a bright temporal line," the court has held that a lapse of three or four months "between the protected activities and discharge was 'too long to establish a causal connection by temporal proximity alone.'" *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 1993 F. App'x 229, 233 (4th Cir. 2006) (unpublished)).

In this case, Plaintiff alleges that, Argueta's sexually harassing conduct toward her began "immediately" upon her hire on July 15, 2013, (ECF No. 7 ¶¶ 7, 14), and she

"immediately began complaining" to her supervisor, (*id.* ¶ 18). Plaintiff alleges that her constructive discharge occurred on August 1, 2013 when she quit her job at the restaurant "because she could no longer stand Defendant Argueta's constant harassment and retaliation." (*Id.* ¶ 25.) Thus, there was less than one (1) month between Plaintiff's protected opposition activity and the adverse employment action. Courts have found very close temporal proximity where two months or less lapsed between the alleged protected activity and the adverse employment action. *See, e.g., Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (stating that plaintiff "tend[ed] to show causation" where her evidence shows that she engaged in protected activity "just a month before she was terminated"); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (holding that a time period of two-and-a half-months between the protected activity and an adverse employment action was sufficiently close to make a prima facie showing of causation solely based on temporal proximity); *Carter*, 33 F.3d at 460 (finding sufficient temporal proximity where adverse employment action occurred six weeks after participating in an EEOC hearing); *Fleming v. S.C. Dep't of Corrs.*, 952 F. Supp. 283, 288 (D.S.C. 1996) (holding that plaintiff's transfer one month after engaging in protected activity was "strongly suggestive" of retaliation). Accordingly, the Court finds that Plaintiff has alleged sufficient facts to show close temporal proximity and thus, a causal link, between her protected activity and the adverse employment action.

The Court concludes that, taking Plaintiff's factual allegations as true, Plaintiff has stated a plausible claim for retaliation under Title VII. Defendants' motion to dismiss this claim will, therefore, be denied.

## B. Battery (Claim 1)

Plaintiff alleges that Argueta committed a battery on her person. (ECF No. 7 ¶¶ 27–29.) Defendants argue that Plaintiff's battery claim should be dismissed because "Plaintiff has not alleged facts showing [that Argueta's slapping of Plaintiff's buttocks] was an intentional contact with the Plaintiff." (ECF No. 16 at 5.) The Court disagrees.

In North Carolina, the four elements of a claim for battery are: "intent, harmful or offensive contact, causation, and lack of privilege." *Hawkins v. Hawkins*, 400 S.E.2d 472, 475 (N.C. Ct. App. 1991), *aff'd*, 417 S.E.2d 447 (N.C. 1992).

Here, Defendants seemingly mischaracterize the allegations in Plaintiff's Complaint by stating that "Plaintiff alleged Francisco was slapping at an insect and hit her rear end." (ECF No. 16 at 5.) No such allegation is found in Plaintiff's Complaint. Instead, Plaintiff's specific factual allegations in support of her battery claim are as follows:

> On or about July 28, 2013, Argueta, without provocation, slapped Plaintiff on the buttocks with his hand. The blow was so hard that it left a hand print on Plaintiff's skin. When Plaintiff questioned [Argueta] and said that he had hurt her, Argueta smiled and commented with words to the effect that there was an insect on Plaintiff's "butt." (ECF No. 7 ¶ 22.)

The Court finds that these factual allegations state a plausible claim for battery. The Court will, therefore, deny Defendants' motion to dismiss this claim.

## C. Vicarious liability of Defendant Owners for Battery (Claim 2)

An employer may be liable for the tortious conduct of its employee under the following circumstances: (i) if the employer expressly authorized the tortious behavior; (ii) if the tortious

act occurred while the employee was acting within the scope of his employment or in furtherance of the employer's business; or (iii) if the employer ratified the employee's tortious conduct. *Brown v. Burlington Indus., Inc.*, 378 S.E.2d 232, 235 (N.C. Ct. App. 1989). Defendants contend that "Plaintiff has not pled facts to support her claim that Defendant Owners knew, ratified, or authorized" the alleged tort committed by Argueta. (ECF No. 16 at 8.) The Court agrees.

First, Plaintiff's Complaint contains no factual allegations that Defendant Owners expressly authorized Argueta's alleged battery on Plaintiff. Second, Plaintiff fails to plead facts to support her conclusion that Argueta's tortious act occurred while he was acting within the scope of his agency "as a manager for the Defendant Owners, holding direct supervisory authority over the Plaintiff." (ECF No. 7 ¶¶ 31–32.) Moreover, "[i]ntentional tortious acts are rarely considered to be within the scope of an employee's employment." *Brown*, 378 S.E.2d at 235. Further, nowhere in the Complaint does Plaintiff allege any facts to show that, while working at the restaurant, Argueta exercised any control or authority over Plaintiff. As noted earlier, although the Complaint states that "Argueta served as the general manager of the restaurant . . . most of the time," (ECF No. 7 ¶ 8), the Complaint also states that Argueta's title was "Kitchen Manager," (*id.*), and that Wilkes, not Argueta, served as Plaintiff's supervisor,[7] (*id.* ¶ 7).

Third, while Plaintiff states that she repeatedly complained about Argueta's allegedly inappropriate conduct to Wilkes (who then notified Defendant Owners), (*id.* ¶ 12), there are no factual allegations to show that Defendant Owners ratified Argueta's alleged battery on

---

[7] According to the Complaint, Wilkes hired Plaintiff, and "was responsible for training the waitress staff, made out the waitress work schedules, and calculated their payroll." (ECF No. 1 ¶ 7.)

Plaintiff. An employer ratifies the tortious conduct of its employee if it "had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 122 (N.C. Ct. App. 1986). Here, Plaintiff's Complaint does not allege that, following the alleged battery, she complained *about the battery* to Wilkes, or Defendant Owners. As a result, the Complaint fails to show that Defendant Owners knew of the circumstances related to the alleged battery such that they ratified Argueta's tortious conduct.

The Court, therefore, concludes that Plaintiff has failed to sufficiently allege facts stating a plausible claim for vicarious liability against Defendant Owners for battery. Accordingly, the Court will grant Defendants' motion to dismiss this claim.

### D. <u>Negligent Supervision/Retention by Defendant Owners (Claim 3)</u>

In North Carolina, a plaintiff seeking to hold an employer liable for negligent supervision or retention must prove: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith*, 202 F.3d at 249–50; *see Efird v. Riley*, 342 F. Supp. 2d 413, 429 (M.D.N.C. 2004) (explaining that, in North Carolina, "a plaintiff must allege that the defendant's employees committed tortious acts of which the defendant had actual or constructive knowledge").

The Court finds that the allegations in Plaintiff's Complaint satisfy both elements of this claim. Specifically, Plaintiff alleges that, Argueta, an employee of Defendant Owners, committed the tortious act of battery[8] when, "without provocation, [he] slapped Plaintiff on

---

[8] Plaintiff also argues that her allegation of sexual harassment, under Title VII, serves as an additional tortious act underlying this claim. (ECF No. 20 at 13.) The Court recognizes that, in North Carolina,

the buttocks." (ECF No. 7 ¶¶ 22, 37.) Plaintiff also alleges that prior to the alleged battery, she "repeatedly reported and complained" to her supervisor, Wilkes, about Argueta's sexual harassment, "and Wilkes relayed these complaints to the Defendant Owners." (*Id.* ¶ 20.) Plaintiff further alleges that "Argueta has a long history of sexually harassing the waitresses" at the restaurant, and Defendant Owners had been notified "many times over the years" about complaints related to Argueta's "inappropriate conduct." (*Id.* ¶¶ 9, 13.) In addition, Plaintiff alleges that Wilkes "had even warned the Defendant Owners repeatedly that Argueta's conduct was going to get the restaurant 'into trouble.'" (*Id.*)

Based on these allegations, the Court concludes that Plaintiff has sufficiently alleged facts to state a plausible claim for relief as to her negligent supervision or retention claim against Defendant Owners. Thus, the Court will deny Defendants' motion to dismiss this claim.

### E. <u>Punitive Damages against all Defendants (Claim 5)</u>

Plaintiff seeks punitive damages in this case. Defendants argue that "Plaintiff's speculations, conclusions, and assertions masquerading as factual allegations do not provide a

---

the issue of whether a plaintiff may base its claim of negligent supervision or retention on a Title VII violation has not been squarely addressed by North Carolina appellate courts. *See Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707–08 (E.D.N.C. 2009). As a result, some federal district courts in North Carolina have held that, on a negligent supervision or retention claim, a Title VII violation may constitute a tortious act under law, *see, e.g., Efird*, 342 F. Supp. 2d at 429–30; yet other federal district courts in North Carolina have held that, in North Carolina, a Title VII violation does *not* serve as a tortious act for purposes of a negligent supervision claim, *see, e.g., Rathbone v. Haywood Cty.*, No. 1:08cv117, 2008 WL 2789770, at *3 (W.D.N.C. July 17, 2008). Additionally, the Fourth Circuit, in its decision in *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003), construed North Carolina law to require a *common law* tort, rather than a statutory tort, to serve as the basis for a negligent supervision or retention claim. For purposes of the instant motion, however, because Plaintiff also alleges the common law tort of battery in connection with her negligent supervision or retention claim, this Court need not decide whether North Carolina law recognizes Title VII violations as tortious acts on which a plaintiff may base a negligent supervision or retention claim.

plausible basis for a claim for punitive damages, and as such, the claim for punitive damages should be dismissed." (ECF No. 16 at 17.)

With respect to Plaintiff's federal claim, a Title VII plaintiff may seek to recover punitive damages against an employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Likewise, as to Plaintiff's state law claims, North Carolina law permits recovery of punitive damages in actions involving fraud, malice or willful and wanton conduct. *See* N.C. Gen. Stat. § 1D-15.

Here, Plaintiff has alleged sufficient facts, (*see* ECF No. 7 ¶¶ 9, 11–24, 30), to show that Defendants acted "deliberately, intentionally, purposefully, maliciously, and otherwise in a willful and wanton fashion," (*id.* ¶ 45). The Court finds that the allegations in Plaintiff's Complaint, (*see id.* ¶¶ 9, 11–24, 30), taken as true, are sufficient to support Plaintiff's claim for recovery of punitive damages as to the surviving federal and state law claims discussed above. The Court will, therefore, deny Defendants' motion to dismiss Plaintiff's claim for punitive damages.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 15) is GRANTED IN PART AND DENIED IN PART. Defendants' motion is granted as to Plaintiff's claim of vicarious liability against Defendant

Owners for battery (Claim 2).  Defendants' motion is denied as to all remaining claims.

This, the 31st day of March, 2017.


_____/s/ Loretta C. Biggs_____
United States District Judge